UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION


JOSEPHINE KIRKWOOD o/b/o T.L.S.,    )
                                                )
                  Plaintiff,        )
                                                )
              v.              )       No.  1:06CV175HEA
                                              )             (TIA)
MICHAEL J. ASTRUE, Commissioner    )
of Social Security,                    )
                                                )
                Defendant.     )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

       This cause is on appeal from an adverse ruling of the Social Security Administration.  All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.


I.      **Procedural History**

       On October 15, 2003, Claimant's mother, Josephine Kirkwood filed an application for Child's Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. on her son's behalf.  (Tr. 156-62).[1]  In the Application Claimant's mother states that her son's disability began on October 10, 2003, due to behavior problems and speech problems.  (Tr. 159).  On initial consideration, the Social Security Administration denied Claimant's claims for benefits.  (Tr. 91-95).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 96-101).  On October 6, 2004, a hearing was held

---

    [1]"Tr." refers to the page of the administrative record filed by the defendant with its Answer (Docket No. 11/filed March 14, 2007).

before an ALJ. (Tr. 34-47). Thereafter, on November 12, 2004, the Administrative Law Judge ("ALJ") issued a decision denying Claimant's claims for benefits. (Tr. 74-85, 91-95).

The Appeals Council remanded the case for further consideration on August 8, 2005. (Tr. 87-90). The Appeals Council vacated the hearing decision finding that the ALJ's decision contained inconsistent conclusions and findings regarding Claimant's severe impairments and functioning. (Tr. 88). On consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 104-07). Claimant requested a hearing before an ALJ. (Tr. 108-09). On November 18, 2005, a hearing was held before an ALJ. (Tr. 48-72). Claimant testified and was represented by counsel. (Id.). Claimant's mother also testified at the hearing. (Tr.52-70). On June 12, 2006, the ALJ issued a new decision finding Claimant not disabled. (Tr. 11-21). On September 27, 2006, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on June 12, 2006. (Tr. 7-8). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on October 6, 2004

At the hearing on October 6, 2004, Claimant's mother testified in response to questions posed by the ALJ and counsel. (Tr. 37-46). Claimant's date of birth is October 2, 1998, and at the time of the hearing, Claimant was six years of age. (Tr. 37-38). Claimant lives with his mother, Josephine Kirkwood. (Tr. 38). Claimant had just started kindergarten before the hearing. (Tr. 43). Ms. Kirkwood testified that Claimant will continue taking medications and he receives speech therapy at school. (Tr. 44).

Ms. Kirkwood testified that Dr. Bridget Hurt, a licensed psychologist, treated Claimant and diagnosed him with attention deficit hyperactivity disorder ("ADHD"). (Tr. 38). Dr. Hurt prescribed Strattera for Claimant's ADHD. (Tr. 38-39). Although Ms. Kirkwood testified that Claimant takes his medication as prescribed, Strattera has not helped Claimant inasmuch as his behavior did not improve but became worse when taking Strattera. (Tr. 39). Prior to taking Strattera, Claimant took Ritalin for one month without experiencing any improvement in his behavior. (Tr. 39).

Ms. Kirkwood testified that Claimant has a problem sitting still, and he is an active child. (Tr. 39-40). Claimant does not listen to anyone including his teachers. (Tr. 40). Ms. Kirkwood testified that Claimant has problems in school and has discussed his problems with his teachers. His teacher reported that Claimant would not sit down in the classroom and do his work, and he would get up and run around. Ms. Kirkwood testified that she experienced the same problems with Claimant. (Tr. 40). Before starting school, Claimant attended Head Start, but Ms. Kirkwood removed Claimant from the program because of his behavior. (Tr. 42-43). Ms. Kirkwood testified Claimant's behavior has been a problem for the last several years. (Tr. 43). Claimant had not received a report card before the hearing. (Tr. 45).

As an example of how Claimant acted impulsively, Ms. Kirkwood cited how Claimant would spit on his siblings, say bad/curse words, and not listen. (Tr. 40-41). Ms. Kirkwood testified that Claimant has problems getting along with other people and fights with children in the neighborhood and at school. (Tr. 41). In Dr. Hurt's report, she noted how Claimant approaches another child and smacks the child. (Tr. 41). Ms. Kirkwood testified that she cannot read a book to Claimant, because he has problems concentrating and paying attention. (Tr. 42). Most of the

time Claimant cannot sit still long enough to watch a thirty-minute television show.  (Tr. 42).

As to Claimant's speech problem, Ms. Kirkwood testified that Claimant takes a long time for his words to come out of his mouth, a hesitant type speech.  (Tr. 44).  When Claimant speaks, Ms. Kirkwood can understand him.  (Tr. 44).  Claimant refused to answer the ALJ's questions using words.  (Tr. 46).  In response to the ALJ's question regarding whether he liked attending kindergarten, Claimant shook his head in the affirmative.  Ms. Kirkwood testified that Claimant does not speak to other people.  (Tr. 46).

### B.  Hearing on November 18, 2005

#### 1.  Testimony of Claimant's Mother

At the hearing on November 18, 2005, Claimant's mother, Josephine Kirkwood, testified in response to questions posed by the ALJ and counsel.  (Tr. 50-71).  Claimant's date of birth is October 2, 1998, and at the time of the hearing, Claimant was seven years of age.  (Tr. 50).  Claimant lives with his mother, Josephine Kirkwood, three siblings, and her husband in a rented house.  (Tr. 52, 54).  Claimant is the middle child.  His oldest brother, age eight, receives SSI for his behavioral problems.  (Tr. 62).  Ms. Kirkwood's husband does not work outside the home and has applied for disability due to his severe arthritis in both shoulders and knee.  (Tr. 52-53).  Her husband had worked testing rails for the railroad for approximately twenty years, but he injured his shoulders and knee after a fall at work.  (Tr. 65).  The family's income of $1,392 consists of disability benefits for Ms. Kirkwood's other son, and welfare benefits for the other two children.  (Tr. 54).  Ms. Kirkwood testified that she attended behavioral special classes while in school and received SSI benefits in the amount of $579 per month.  (Tr. 54-55).

Claimant is a first grade student at Malden Elementary School.  (Tr. 53).  Claimant's

teacher is Hope Picker, and he receives speech therapy at school. (Tr. 53). Ms. Kirkwood testified that Claimant's teacher reported that Claimant does not sit at his desk most of the class, and that she calms him down by making Claimant sit at desk close to her. (Tr. 63). Ms. Kirkwood has been called to school once during the school year. (Tr. 64). Claimant's grades are okay. (Tr. 64).

Ms. Kirkwood first noticed Claimant's behavioral problems when he was four and one half. (Tr. 58). Claimant completed preschool at Head Start and kindergarten at Malden Elementary. (Tr. 58). The ALJ noted that in the earlier decision, the ALJ noted a problem of lack of discipline or poor discipline. (Tr. 62). Ms. Kirkwood explained that she disciplines Claimant by taking away his bike for a week, prohibiting him from watching television, or placing him in time out. (Tr. 62). Ms. Kirkwood has not discovered a form of discipline whereby she can control Claimant's behavior. (Tr. 69).

Ms. Kirkwood testified that Claimant has a bad behavioral problem as exhibited by his fighting with and picking on other children and his cursing. (Tr. 56). The school contacted Ms. Kirkwood almost every day because of Claimant's behavior, and so far three times during the current school year. (Tr. 56-57). In the three months, Ms. Kirkwood has been contacted because of Claimant's fighting with other children and his failure to listen to the teachers. (Tr. 57).

Ms. Kirkwood makes sure that Claimant takes Adderall as prescribed by Dr. Hurt. (Tr. 57). The school nurse administers Claimant's dosage of Adderall after Claimant eats breakfast. (Tr. 57-58). Ms. Kirkwood testified that Adderall calms Claimant down a little bit, and his earlier medications did not help at all. (Tr. 66-67). Ms. Kirkwood testified that Dr. Hurt treated Claimant for a period of time, but she did not feel like the treatment helped Claimant nor would

additional treatment benefit Claimant.  (Tr. 67).  Ms. Kirkwood testified that Claimant has broken some glasses at home, and most of the time she cannot leave Claimant with another family member.  (Tr. 67-68).

Claimant takes the school bus to school, but he received a three-day suspension from taking the bus service for throwing rocks at other children at the bus stop ten days before the hearing.  (Tr. 59-60).  During his suspension, his mother drove Claimant to school.  (Tr. 60).  The year before, Claimant had been suspended two times from taking the bus, because of his rough housing and harsh play.  (Tr. 60-61).  Claimant received a warning in kindergarten for stealing out of another student's backpack.  (Tr. 61).  Claimant talks all the time at school, and his teacher has difficulty keeping Claimant quiet at school.  (Tr. 68).

### 2.  Testimony of Claimant

Claimant testified that his name is Tray, and he is seven years old.  (Tr. 70).  Claimant attends school in the first grade.  (Tr. 70).  For fun, Claimant likes to play.  (Tr. 71).  Claimant would not answer the other questions posed by the ALJ.  (Tr. 70-71).

### 3.  Open Record

During the hearing and at the request of counsel, the ALJ determined that the record would be held open for thirty days so that Claimant's counsel could submit updated records including Claimant's school records.  (Tr. 51).  In addition, the ALJ requested counsel to submit a teacher questionnaire completed by Claimant's current first grade teacher.  (Tr. 58, 71).  A review of the record shows that counsel did submit additional evidence from the Malden R-1

School District to the ALJ before he issued a decision denying Claimant's claims for benefits as directed by the ALJ. (Tr. 155).

### 4. Forms Completed by Claimant

In the Disability Report - Child, Claimant's date of disability is listed as October 10, 2003, and his disabling conditions as speech problems and behavior problems. (Tr. 233-44). Ms. Kirkwood listed Claimant's playing during class and fighting at school as Claimant's conditions that limit his daily activities. (Tr. 235). Dr. Hurt is listed as Claimant's treating doctor for his behavior and learning problems, and Dr. Hurt first treated Claimant in 2004. (Tr. 237).

In the Daily Activities Report dated January 25, 2005, Ms. Kirkwood indicated that Claimant misbehaves all day by pulling down his clothes and sticking his finger in a light socket, playing with fire, stealing food from the refrigerator, and getting up throughout the night. (Tr. 260). Ms. Kirkwood also indicated that Claimant threatens to kill his siblings and classmates. (Tr. 260). Ms. Kirkwood noted that Claimant fights all the time and is constantly in trouble with the teacher and hit the teacher. (Tr. 261). Claimant started taking Strattera on April 26, 2004, but Ms. Kirkwood did not notice any change in his behavior. (Tr. 261). Ms. Kirkwood noted that Claimant stutters every word and sometimes will not talk at all. (Tr. 263).

In the Disability Report- Appeal, Claimant's mother indicated that Claimant's speech and behavior problems have become worse. (Tr. 308-16). Ms. Kirkwood reported not being able to get Claimant to do anything and having to go to the school almost every day because of Claimant's behavior. (Tr. 312). Ms. Kirkwood further noted that Claimant needs medication to come down. (Tr. 316).

## III.  School and Medical Records

In the bus conduct report dated October 13, 2003, the driver cited Claimant for standing up while the bus was in motion. (Tr. 150). The school administrator noted that this was Claimant's first offense and if Claimant committed a second offense, he would lose the privilege of riding the bus for three days. (Tr. 150).

In the Teacher Questionnaire dated October 27, 2003, Regina Schaffer, Claimant's classroom teacher, noted how she gives Claimant individualized directions and many reminders. (Tr. 183-90). Ms. Schaffer noted that she had not implemented behavior modification strategies. (Tr. 186).

On November 12, 2003, Judy Britton, a speech-language pathologist, evaluated Claimant and diagnosed him with borderline moderate/severe mixes language disorder. (Tr. 380-82). The Missouri Department of Elementary and Secondary Education Section of Disability Determinations referred Claimant for an assessment of his speech and language abilities. (Tr. 380). Ms. Kirkwood reported primary concern to be Claimant's difficulty staying on task, following directions, and making himself understood to others. The testing revealed Claimant's level of function to be within normal limits when judged with age and peer group. (Tr. 380). The Preschool Language Scale test revealed Claimant to have a severe language impairment when compared with age and peer group. (Tr. 381). During the testing, Claimant demonstrated moderate difficulty with staying on task. (Tr. 382). In the summary, Ms. Britton opined that Claimant has a borderline severe language disorder with receptive skills better than expressive skills. Ms. Britton recommended that Claimant be given preferential seating at the front of the

classroom to increase attention to task, allow extra time for student responses, and direct speech services to increase language skills to within normal limits with age and peer group. (Tr. 382).

In the Individualized Education Program ("IEP") meeting on November 24, 2003, the IEP team, including Ms. Kirkwood, expressed concern regarding Claimant's language and adaptive behavior skills. (Tr. 205-16). With respect to placement, the team determined to place Claimant in an early childhood special education setting with specialized instruction in the area of language for one period per week. (Tr. 215-16).

In the Childhood Disability Evaluation Form dated December 1, 2003, Claimant's impairments included severe language impairment/articulation disorder and asthma. (Tr. 392-98). A speech therapist determined that Claimant's impairment or combination of impairments to be severe but does not meet, medically equal, or functionally equal the listings. (Tr. 392-93). Dr. Jean Diemer affirmed the determination of the speech therapist. (Tr. 394). In the domain evaluations, the speech therapist found Claimant to have a marked limitation in acquiring and using information due to the language disorder. (Tr. 395). The evaluator noted that Claimant is given individualized directions and many reminders in the classroom. The speech therapist also determined that Claimant to have a less than marked limitation in interacting and relating with others due to the language disorder. (Tr. 395). Claimant has no limitations in the domain areas of attending and completing tasks, moving about and manipulating objects, caring for yourself, and heath and physical well being. (Tr. 395-96).

In the office visit at Malden Medical Center on December 5, 2003, Ms. Kirkwood requested testing of Claimant because of behavior problems. (Tr. 406, 504). Dr. Hunt diagnosed Claimant with ADD. (Tr. 406, 504).

In the Child Symptom Inventory dated December 10, 2003, Traci Wilson, a special education teacher, noted that she provides Claimant with specialized instruction in the areas of adaptive behavior and language therapy.  (Tr. 191-94).  Ms. Wilson noted that Claimant is easily distracted and has great difficulty concentrating on classroom activities.  (Tr. 194).

While in pre-K, the director of special education at the Malden R-1 School District, referred Claimant for evaluation after reviewing preschool screening data and noting concerns from Trisha Earnheart, SLP, in the areas of speech and language and from Claimant's classroom teacher regarding Claimant's success in the cognitive and adaptive areas.  (Tr. 125-34, 221-30, 291-99,  345-54).  Claimant's classroom teacher noted that he struggles with routine tasks.  (Tr. 126, 222, 292, 346).   Claimant's full scale IQ of 75 falls within the borderline classification.  (Tr. 127, 223, 293, 347).  The evaluator noted difficulty in testing Claimant, because he was determined to do as he wanted and thus causing the evaluator to doubt the validity of his score. (Tr. 127-28, 223-24, 293-94, 347-48).  In the daily living skills domain, Claimant's strengths included his willingness to help with extra chores when asked, his ability to brush his teeth without assistance, and his ability to get a drink of water unassisted.  (Tr. 129, 225, 295, 349). His weaknesses included his inability to wash his face without assistance and put his shoes on the correct feet.  In the socialization domain, Claimant's strengths were his manners, and ability to label feelings and identify people by characteristics other than name.  His weaknesses were his inability to share toys, and to follow rules in simple games and classroom rules.  (Tr. 129, 225, 295, 349).  After testing by a speech pathologist, the evaluator noted that Claimant's speech errors are age appropriate.  (Tr. 130, 226, 296, 350).  With respect to his language, testing

revealed that Claimant meets eligibility to be considered a student with severe language impairment. (Tr. 130-32, 226-28, 296-98, 350-52).

On January 26, 2004, Dr. Bridget Hurt, a licensed psychologist, conducted a psychological evaluation to rule out ADHD. (Tr. 136 490). Ms. Kirkwood reported Claimant experiencing difficulties at school including poor attention, inability to complete tasks, and inability to follow directions. Ms. Kirkwood also reported that Claimant is overactive and aggressive at times. (Tr. 136, 490). Ms. Kirkwood reported that Claimant currently takes no medications. (Tr. 137, 491). Dr. Hurt noted a positive family history of ADHD. (Tr. 137, 491). Claimant's head start teacher noted that Claimant is easily distracted, has great difficulty in concentrating on classroom activities, and has significant symptoms of inattentiveness. (Tr. 137, 491). Dr. Hurt listed ADHD and educational problems in the diagnostic impression. (Tr. 138, 492). Dr. Hurt opined that the results of the testing were congruent with the diagnosis of ADHD and recommended a medication evaluation for treatment and family therapy for parenting strategies to reduce some conflict and difficulties. (Tr. 138, 492).

In a follow-up visit on March 23, 2004, Ms. Kirkwood reported that Claimant had been kicked out of head start until a return visit. (Tr. 140, 487). Dr. Hurt referred Claimant for a medication evaluation with the family's physician, Dr. Hunt. Dr. Hurt also recommended family therapy to assist in providing appropriate intervention by the family with Claimant. (Tr. 140, 487). On March 24, 2004, Dr. Hunt at the Malden Medical Center prescribed Ritalin as treatment of Claimant's ADHD. (Tr. 141). On a follow-up medication evaluation on April 26, 2004, Dr. Hunt increased Claimant's Ritalin dosage because the medication seemed to wear off

late in the day. (Tr. 142). Dr. Hunt noted Claimant to be well behaved and well mannered. (Tr. 142).

On March 24, 2004, Claimant returned for treatment at the Malden Medical Center with the chief complaint of wanting to discuss ADD. (Tr. 404, 502). Dr. Hunt diagnosed Claimant with ADHD, counseled Ms. Kirkwood regarding medications, and prescribed Ritalin. (Tr. 404, 502).

On April 26, 2004, Claimant returned for a medication evaluation at Malden Medical Center. (Tr. 399, 499). Ms. Kirkwood reported that Claimant's Ritalin is not effective in the p.m. Dr. Hunt noted that Claimant is well mannered and well behaved during the office visit. Dr. Hunt discontinued Claimant's Ritalin prescription and prescribed Strattera for Claimant's ADHD. (Tr. 399, 499).

On July 27, 2004, Ms. Kirkwood reported that Ritalin was not working because Claimant is too hyper. (Tr. 497). Dr. Hunt noted that during the office visit, Claimant was perfectly calm and still, and at times, well mannered. (Tr. 497).

On August 26, 2004, Dr. Hunt refilled Claimant's Strattera prescription. (Tr. 496).

In a Disciplinary Referral dated September 16, 2004, Claimant's teacher noted that she gave Claimant a verbal reprimand for pulling down his pants and showing his private area. (Tr. 143). On September 16, 2004, Claimant's teacher issued another disciplinary referral due to Claimant's disruptive behavior and asked his parents to discuss with Claimant his behavior. (Tr. 144). For a fourth offense of disruptive behavior, Claimant's teacher noted how he was rolling on the floor and not doing his work and disrupting the other students. (Tr. 145). As punishment, the teacher administered two swats and asked his parents to speak to Claimant about his behavior.

(Tr. 145). On September 30, 2004, Claimant's teacher cited him for disruptive behavior including rolling on the floor, intentionally falling out of his chair five to six times, not listening to instructions, and throwing a pencil at the classroom aide. (Tr. 146, 301). As punishment, the teacher administered three swats. (Tr. 146).

In a note dated October 5, 2004, a school administrator noted that Claimant continues to misbehave and disrupting the learning environment for the other students. (Tr. 147, 232). In another disciplinary referral, the teacher noted how Claimant pushed and choked another student. (Tr. 148). During the week of October 31-November 4, 2004, Claimant lost an entire recess for not listening, disrupting the class several times, and dumping pencil shavings on the floor. (Tr. 149). On November 15, 2004, Claimant was suspended for three days for being disruptive in the library and hitting a child. (Tr. 301).

In a follow-up visit for his ADHD on November 19, 2004, Ms. Kirkwood reported that Claimant is "100% better" taking Strattera. (Tr. 495). Dr. Hunt refilled Claimant's Strattera prescription. (Tr. 495).

In Claimant's annual IEP dated November 19, 2004, (Tr. 278-90, 318-30), the team noted as follows:

> Since the prior IEP, [Claimant's] adaptive behavior skills, as well as, pre-academic skills have increased to a more appropriate age level. [Claimant] increased his language skills by understanding spatial concepts (under, in back of, next to, in front of), understanding descriptive concepts, describing age-appropriate procedures, and naming categories. Although, he has achieved these objectives, he should continue with these objectives increasing in complexity. [Claimant] continues to exhibit difficulty answering wh-questions.

(Tr. 280, 320). The team indicated that Claimant does not exhibit behaviors that impede his learning or that of others. (Tr. 281, 321). The team determined that Claimant's goal should be to

increase his receptive and expressive language skills by answering the wh-questions with 80% accuracy. (Tr. 282-83, 322-23).

On December 3, 2004, Claimant was suspended for two days for fighting with another student. (Tr. 301).

On January 20, 2005, Claimant returned to Dr. Ranjit Shenoy for a medication refill. (Tr. 494). Ms. Kirkwood reported that Claimant has been taking the Strattera prescription regularly, but Dr. Shenoy noted that Claimant's last refill was a thirty day supply given to Claimant two months earlier. Ms. Kirkwood reported that the Strattera is making a difference with Claimant's behavior although he is still not properly behaving, and he is not having any systemic symptoms. Dr. Shenoy refilled the Strattera prescription and advised Ms. Kirkwood that Claimant needs to be given the medication regularly. (Tr. 494).

In the Teacher Questionnaire completed on January 28, 2005, Claimant's classroom teacher, Amy Schaenehe, noted that Claimant receives special education services for speech. (Tr. 268-75). In completing the questionnaire, the teacher indicated that Claimant has a slight problem expressing ideas in the written form. (Tr. 269). The teacher also noted that Claimant has a slight problem focusing long enough to finish assigned task, carrying out multi-step instructions, changing from one activity to another without being disruptive, and working without distracting self or others. (Tr. 270). The teacher noted that Claimant has no problems interacting and relating with others. (Tr. 271). With caring for himself, the teacher indicated Claimant has a slight problem handling frustration appropriately and being patient when necessary. (Tr. 273). Claimant takes medications for ADHD. (Tr. 274).

In the January 31, 2005, speech/language pathologist questionnaire, Ms. Hathy-Downing, a M.S.P.-CCC -SLP, noted that Claimant receives language therapy twice a week for a total of sixty minutes. (Tr. 276). Ms. Hathy-Downing noted progress has been made by increasing his language skills, and Claimant's adaptive behavior skills and pre-academic skills have increased to a more appropriate age level. (Tr. 277). Ms. Hathy-Downing opined that Claimant appears to communicate with teachers and peers with very little difficulty. (Tr. 277).

On referral by Disability Determinations, Dr. Leslie Henson of the Thompson Speech-Language Clinic, completed a speech and language evaluation to assess communicative strengths and weaknesses of Claimant on February 22, 2005. (Tr. 509-20). Dr. Henson opined that Claimant has a moderate language impairment manifested in both the receptive and expressive areas of language and a mild sound system impairment. (Tr. 511).

In the Childhood Disability Evaluation form dated March, 2005, language impairment, sound system disorder, and ADHD are listed as Claimant's impairments. (Tr. 302). Two consultants, one a B.S. in speech therapy, determined that Claimant's combination of impairments do not meet medically or functionally equal the listings. (Tr. 302-03). In the domain evaluations, the consultants determined that Claimant has less than marked limitation for acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself. (Tr. 304-05). In the explanation of findings, the consultants opined as follows:

> Clmt has diagnosis of language impairment and sound system disorder as well as a diagnosis of ADHD. Clmt receives speech therapy and takes medication for ADHD. Clmt's functioning is not markedly limited as indicated within this assessment. Clmt's combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings. Daily activity report, completed by parent/guardian indicates that clmt threatens to kill family members and classmates, this is not consistent with information provided by teacher. Therefore,

credibility is reduced.

(Tr. 307).

In the bus conduct report dated November 3, 2005, the driver cited Claimant for throwing a rock at another student at the bus stop.  (Tr. 151).  The principal suspended Claimant from riding the bus for three days.  (Tr. 151).

Claimant's teacher issued a disciplinary referral on November 10, 2005, for fighting with another student on the playground.  (Tr. 152).  The other student admitted to play fighting.  The principal noted that this disciplinary referral was Claimant's first offense for the year and disciplined Claimant by administering two swats.  (Tr. 152).

In the annual IEP dated November, 2005, the team noted that Claimant has mastered the use of the wh-questions during drills and conversational speech.  (Tr. 332-43)

In the First Grade Progress Report, Claimant's teacher noted that she is concerned with his grades and reading skills.  (Tr. 357-58).  The teacher opined that with tutoring hopefully his skills would improve and asked his mother to work with him at home.  (Tr. 358).

## IV.    The ALJ's Decision

The ALJ found that Claimant was seven years old and had never performed substantial gainful activity.  (Tr. 20).  The ALJ further found that the allegations of disability were not credible.  Claimant has the medically determinable impairments of a language/speech disorder and an attention deficit hyperactivity disorder.  (Tr. 20).  However, his severe combination of impairments were not of the severity that medically met or equaled any impairment listed in Part B of Appendix 1 to Subpart P, Listing of Impairments, 20 C.F.R. Part 404.  (Tr. 21).  Further, the ALJ found that Claimant did not have an impairment or combination of impairments that

functionally equaled the listings or resulted in marked and severe functional limitations.

Therefore, the ALJ concluded that Claimant had not been disabled at any time since protectively filing for Supplemental Security Income Benefits on October 10, 2003. (Tr. 21).

## V.   Discussion

In a child disability insurance benefits case, the definition for disability for children is set forth in 20 C.F.R. § 416.906. That provision states:

> If you are under age 18, we will consider you disabled if you have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 416.906.

In determining disability, the ALJ must utilize a sequential evaluation process set forth in 20 C.F.R. § 416.924. The ALJ first determines whether claimant is doing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 416.924(b). If the claimant is not working, the ALJ considers claimant's physical or mental impairment(s) to determine whether claimant has a medically determinable impairment(s) that is severe. If the impairment(s) is not medically determinable or is a slight abnormality that causes minimal limitations, the ALJ will find that claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416. 924(c). If the impairment(s) is severe, it must meet or medically or functionally equal the listings. 20 C.F.R. § 416.924(d); see also Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853 (8th Cir. 2003) (setting forth the three-step sequential steps to determine disability in children). The

listings for mental disorders in children are contained in 20 C.F.R. Part 404, Subpart P, §§

112.00-112.12.

Further, when determining functional limitations, 20 C.F.R. § 416.926a(a) provides that where a severe impairment or combination of impairments does not meet or medically equal any listing, the limitations will "functionally equal the listings" when the impairment(s) "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." The ALJ considers how a claimant functions in activities in the following six domains: "(I) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating to others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). An impairment(s) is of listing-level severity if a claimant has "marked" limitations in two of the domains in paragraph (b)(1) or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A child has a marked limitation in a domain if the impairment "interferes seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

When evaluating a claimant's ability to function in each domain, the Commissioner asks for and considers information that will help to answer the following questions: What activities is the child able to perform? What activities is the child unable to perform? Which of the child's activities are limited or restricted compared to other age-equivalent children who do not have impairments? Where does the child have difficulty with activities - at home, in childcare, at school, or in the community? Does the child have difficulty independently initiating, sustaining, or completing activities? What kind of help does the child need to do activities, how much help is needed, or how often is it needed? 20 C.F.R. § 416.926a(b)(2)(I)-(v).

These questions are not, singularly or as a whole, the only factors useful to determining

whether or not a child has a "marked" or "extreme" limitation. 20 C.F.R. § 416.926a(e)(2)(4)(I). If applicable, test scores can be used in combination with other factors, observations and evidence to determine the level of impairment. Id. "Marked" or "extreme" limitations as defined by test scores are not automatically conclusive if additional evidence in the record shows a pattern of behavior inconsistent with test scores. See 20 C.F.R. § 416.926a(e)(4).

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not reweigh the evidence or review the record de novo. Id. (internal citation omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id.; Clarke v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

The ALJ may discount claimant's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Id.; Ricketts v. Secretary of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a claimant claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to

claimant's complaints under the Polaski[2] standards and whether the evidence so contradicts claimant's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak, 49 F.3d at 1354.

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

Claimant argues that the ALJ's determinations that he has a less then marked limitation in acquiring and using information, attending and completing tasks, and in interacting and relating

---

[2]The Polaski factors include::
1.      the objective medical evidence;
2.      duration, frequency and intensity of the pain;
3.      precipitating and aggravating factors;
4.      claimant's daily activities;
5.      dosage, effectiveness and side effects of medication;
6.      functional restrictions.
Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

with others are not based upon substantial evidence. Claimant also contends that the ALJ's determination that he does not have impairments that functionally equal the listings is not supported by substantial evidence on the record as a whole.

### A.    Acquiring and Using Information

When analyzing the domain of acquiring and using information, the Commissioner must consider how well a child acquires or learns information and how well the child uses that information. 20 C.F.R. 416.926a(g). That regulation, in pertinent part, reads as follows:

> (iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.,* by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (*e.g.,* reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing you own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. 416.926a. Examples describing some limitations that may be considered in this domain include the following: inability to demonstrate understanding of words about space, size, or time; *e.g.,* in/under, big/little, morning/night; difficulty in recalling important things you learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and ability to talk only in short, simple sentences and difficulty explaining what you mean. Id.

In finding that Claimant had marked, but not extreme limitation in Claimant's ability to acquire or use information, the ALJ noted:

> The claimant's original language sample for language testing showed that he used basic, simple sentence structure. A language evaluation for the claimant's school

district indicated that he had a significant delay in language and a decreased ability to comprehend/express ideas. These factors suggest that the claimant's language/speech disorder (at least in the past) was such that the claimant, especially if given the benefit of the doubt as to the severity of his impairment, might be seen to have a marked benefit of the doubt as to the severity of his impairment, might be seen to have a marked limitation in acquiring and using information. However, standardized intelligence testing showed that the claimant had a low average verbal IQ and otherwise had IQ scores less than two standard deviations below the mean. Ms. Schaenehe, one of the claimant's teachers, indicated that the claimant, except for a slight problem with written expression, did not have problems acquiring or using information. The claimant's most recent IEP showed that he improved with regard to speech and language and had pre-academic skills at a more age-appropriate level. Ms. Henson indicated that the claimant had language scores in standardized testing that were less than two standard deviations below the mean. Testing administered by Ms. Henson showed that the claimant was able to express a lengthy, complex sentence. Ms. Hathy-Downing indicated that the claimant had progressed, had more age-appropriate skills, and seemed to communicate with teachers and peers with very little difficulty. The evidence shows that the claimant, with some language-related limitations, is showing readiness to acquire and use information. The undersigned finds that the evidence shows that the claimant has marked, but not extreme, limitation in his ability to acquire or learn information or to use learned information.

(Tr. 18). The ALJ properly determined that Claimant has marked limitations in the acquiring and using information domain.

**B.      Concentration, Persistence, and Pace/Attending and Completing Tasks**

When analyzing the domain of attending and completing tasks, the Commissioner must consider how well the child is able to focus, maintain attention, and begin, carry out and finish activities. 20 C.F.R. § 416.926a(h). A child between 6 and 12 years old should be able to pay attention in a variety of situations in order to follow directions, organize school materials, complete classroom and homework assignments, concentrate on details, and change activities or routines without distracting yourself or others, and stay on task and in place when appropriate. 20 C.F.R. § 416.926a(h)(2(iv). Examples of limited functioning in this domain include being

easily distracted or overactive to sounds, movement or touch; being slow to focus or to complete

activities of interest to you; being frequently sidetracked from activities or frequently interrupting

others; and requiring extra supervision to keep on task or activity. 20 C.F.R. § 416.926a(h)(3)(I)-

(v).

The ALJ cited relevant support for his conclusions and reconciled his opinion with

substantial evidence in support. In finding that Claimant had less than marked limitation in

attending and completing tasks, the ALJ noted:

> The claimant has been diagnosed with an attention deficit hyperactivity disorder.
> The claimant's mother told a psychologist, prior to the claimant being prescribed
> medication, that her son did not maintain attention and did not complete tasks.
> However, she testified that medication helped her son. Dr. Shenoy indicated that
> the claimant was well-mannered, well-behaved, alert, cooperative, and well-
> oriented. Another doctor at his clinic indicated that the claimant was perfectly
> calm, well-mannered, and still. As discussed heretofore, the fact that Dr. Shenoy
> had to counsel claimant's mother with regard to regular use of the claimant's
> medication and the failure of the claimant's family to seek recommended family
> therapy are factors that suggest medical noncompliance, which detracts from
> credibility. Ms. Schaenehe indicated that the claimant had no problem with
> completing class work accurately or with finishing on time. The undersigned finds
> that the evidence does not establish that the claimant has marked or extreme
> limitations in his ability to attend to or complete tasks.

(Tr. 18-19). The record indicates that once Claimant started taking medication to treat his

attention deficit disorder, Claimant's behavior improved significantly with treatment. Indeed, Ms.

Kirkwood reported to Claimant's treating doctor on November 19, 2004, how Claimant was

"100% better" with medication. In a follow-up visit, Ms. Kirkwood reported that the medication

made a difference in Claimant's behavior despite admittedly not giving Claimant the medication as

prescribed. Further, in the Childhood Disability Evaluation Form dated December 1, 2003, a

speech therapist determined that Claimant has no limitations in the domain area of attending and

completing tasks. Likewise, in the November 19, 2004, IEP, the team indicated that Claimant does not exhibit behaviors that impede his learning or that of others. Further, in the Teacher Questionnaire completed on January 28, 2005, Claimant's classroom teacher noted that Claimant has a slight problem focusing long enough to finish assigned task, carrying out multi-step instructions, changing from one activity to another without being disruptive, and working without distracting self or others. In the Childhood Disability Evaluation form dated March, 2005, the consultants determined that Claimant's combination of impairments do not meet medically or functionally equal the listings. In the domain evaluations, the consultants determined that Claimant has less than marked limitation in attending and completing tasks.

It is not the task of the undersigned to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g.,* Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996). Having reviewed the entire record, the undersigned finds that there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). Accordingly, substantial evidence supports the ALJ's determination that Claimant's limitation in attending and completing tasks was less than marked and no more than a mild impairment.

**C.    Social Functioning/Interacting and Relating with Others**

When analyzing the domain of interacting and relating with others, the Commissioner considers how well the child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates with others, complies with the rules,

responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. ¶ 416.926a(I). Examples of limited functioning in this domain are that the child has no close friends or has friends that are all older or younger than the child; avoids or withdraws from people the child knows, or is overly anxious or fearful of meeting new people or tying new experiences; has difficulty playing games or sports with rules; has difficulty communicating with others, e.g., in using verbal and nonverbal skills for self-expression, carrying on a conversation, or in asking for assistance; and has difficulty speaking intelligibly. 20 C.F.R. § 416.926a(i)(3)(ii)-(vi).

The ALJ articulated a clear basis for not finding a marked limitation in this domain, and substantial evidence supports the determination that Claimant had no more than a mild impairment. The record and the ALJ indicated that Claimant has been diagnosed with a language/speech disorder and an attention deficit hyperactivity disorder. Although Claimant's mother testified that he frequently misbehaved at school, Dr. Hurt found that Claimant had only moderate global psychological symptoms. Further, his classroom teacher noted that Claimant had no problems interacting and relating to others. Likewise, his IEP reflected that Claimant's adaptive behavior had increased to a more age-appropriate level. In the Childhood Disability Evaluation Form dated December 1, 2003, the speech therapist found Claimant to have a less than marked limitation in interacting and relating with others due to the language disorder. During office visits, doctors noted that Claimant was cooperative, well-behaved and well-mannered. Dr. Hunt noted that during the office visit on July 27, 2004, Claimant was perfectly calm and still, and at times, he was well mannered. In the Teacher Questionnaire completed on January 28, 2005, Claimant's classroom teacher noted that the teacher noted that Claimant has no problems interacting and relating with others. The teacher also noted that Claimant has a slight problem

focusing long enough to finish assigned task, carrying out multi-step instructions, changing from one activity to another without being disruptive, and working without distracting self or others. In the January 31, 2005, Ms. Hathy-Downing opined that Claimant appears to communicate with teachers and peers with very little difficulty. Further, in the Childhood Disability Evaluation form dated March, 2005, the consultants determined that Claimant's combination of impairments do not meet medically or functionally equal the listings. In the domain evaluations, the consultants determined that Claimant has less than marked limitation in interacting and relating with others.

It is not the task of the undersigned to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g.,* Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996). Having reviewed the entire record, the undersigned finds that there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). Accordingly, substantial evidence supports the ALJ's determination that Claimant's limitation in interacting and relating with others was less than marked and no more than a mild impairment.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case

differently.  <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992).   Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation.  Failure to timely file objections may result in waiver of the right to appeal the questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this <u>19th</u> day of February, 2008.

<u>        Terry I. Adelman        </u>
UNITED STATES MAGISTRATE JUDGE